UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC VERSEN, et al.

   Plaintiffs,

             Civil Action No. 21-cv-11545

vs.            HON. MARK A. GOLDSMITH

DETROIT, CITY OF, et al.,

   Defendants.

_____/

**OPINION & ORDER**
**DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (Dkt. 4)**

Plaintiff Eric Versen brings this putative class action against Defendants the City of Detroit

and two of its employees, Police Officer Jeremy Woods and Jana Greeno.  This matter is before

the Court on Versen's motion for a preliminary injunction (Dkt. 4).  Defendants filed a response

(Dkt. 10), and the Court held a hearing on the motion.  Following the hearing, the Court gave the

parties an opportunity to file supplemental memoranda on the issue of whether Versen has standing

to seek injunctive relief (Dkt. 20).  Versen filed a supplemental memorandum (Dkt. 21).  For the

reasons that follow, the Court denies Versen's motion.

**I.  BACKGROUND**

According to Versen, he has a practice of placing furniture and household items in areas

where indigent people can take them free of charge.  Mot. at 1.  He describes this as a "charitable

practice" that he intends to continue in the future.  Id.

The City, however, does not view such practices so favorably.  Pursuant to the City's

municipal code, it is a blight violation to "dump, store or deposit or cause to be dumped, stored or

deposited, on any publicly-owned property, or private property or water, within the City any solid waste . . . ." Id. § 42-2-92.  Section 42-1-42 empowers the police to impound vehicles "operated in the commission" of a blight violation.  To obtain release of an impounded vehicle, the owner of the vehicle may either (i) pay all fines, costs, and fees for the violation, or (ii) provide a copy of a certified bond and contest the blight violation charge at a hearing.  Id. § 42-1-42(a)(1)–(3).  The hearing "shall not be scheduled earlier than 14 days after the service of the blight violation notice on the violator, unless one or more blight violation(s) constitutes an emergency . . . ." Id. § 3-2-24(a)(4).

On May 21, 2021, Versen used his work van to place a couch in an empty lot in the City. Compl. ¶ 7 (Dkt. 1).  This incident was captured on video and reviewed by Woods, who determined that Versen had committed a blight violation.  Police Report (Dkt. 10-2).  Three days after the incident, Woods, without a warrant, had the van towed from the street outside Versen's home and impounded. Id.; Compl. ¶ 8.  The next day, Greeno issued Versen a blight violation notice.  Compl. ¶ 29; Ticket at PageID.50 (Dkt. 4-1).  The notice informed Versen that he could either pay a $800 fine and a $30 fee to regain possession of his van, or he could wait to contest the charge in court on August 18, 2021.  Compl. ¶ 31; Ticket at PageID.50.

Because Versen uses the van "for his livelihood," he felt that he "could not wait nearly two months for a hearing while deprived of his work van." Compl. ¶ 37.  As a result, Versen felt that he had no choice but to pay the fine and fee to regain possession of his vehicle.  Id. ¶¶ 37–38.  He did so, and also incurred towing and storage costs of several hundred dollars.  Id. ¶¶ 38–39.  This lawsuit followed.  Versen seeks declaratory relief and monetary damages.

## II.  ANALYSIS

Versen contends that the City's impounding of his vehicle was a warrantless (and otherwise unjustified) seizure of his vehicle, in violation of the Fourth Amendment of the U.S. Constitution. Mot. at 6–12.  Versen also argues that Defendants violated his Fourteenth Amendment due process rights by failing to provide him with a pre-seizure hearing or, alternatively, a prompt post-deprivation hearing.  Id. at 12–20.  Accordingly, Versen asks the Court to issue a preliminary injunction (i) enjoining the City and its agents from impounding vehicles pursuant to § 42-1-1 and either (ii) enjoining the City and its agents from requiring prepayment of fines or bonds to regain possession of an impounded vehicle or (iii) ordering the City to provide the owners of impounded vehicles with a hearing on demand within four days of the impounding to challenge the legality of the impound.  Id. at 23.

As explained below, Versen lacks standing to pursue injunctive relief.  Even if Versen possessed standing, the preliminary injunction factors favor denying his motion.  The Court addresses in turn the standing issue and the preliminary injunction factors.

### A.  Standing

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  This means that federal courts possess power to resolve only "cases and controversies."  U.S. CONST. art. III, § 2, cl. 1.  "[R]ooted in the traditional understanding of a case or controversy" is the doctrine of standing, which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  To establish standing, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"

3

Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157–158 (2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).[1]

Because "[s]tanding is not dispensed in gross," a plaintiff must demonstrate standing for each form of relief sought. Lewis, 518 U.S. at 358 n.6. "In the context of claims for injunctive or declaratory relief," the threatened injury in fact must be "concrete and particularized," as well as "actual and imminent, not conjectural or hypothetical." Sumpter v. Wayne Cnty., 868 F.3d 473, 491 (6th Cir. 2017) (punctuation modified). "Past exposure to illegal conduct" is insufficient to demonstrate an injury in fact that warrants declaratory or injunctive relief unless the past injury is accompanied by "continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495–496 (1974).

The United States Supreme Court has repeatedly held that a plaintiff lacks standing to seek injunctive relief when the likelihood of future injury depends on the plaintiff committing an illegal act, being caught by the police, and being subjected to the allegedly unconstitutional conduct. See, e.g., Spencer v. Kemna, 523 U.S. 1, 15 (1998) (holding, in the related context of mootness, that a petitioner's habeas petition alleging an unlawful revocation of his parole was moot after the petitioner was released from prison; the risk that the parole revocation would create future negative consequences for the petitioner, such as increasing a sentence for any future crimes, was speculative because it was contingent on the petitioner violating the law, getting caught, and being convicted); City of Los Angeles v. Lyons, 461 U.S. 95, 106–108 (1983) (holding that a plaintiff had standing to seek damages but lacked standing to seek an injunction barring police from using

---

[1] A class representative such as Versen cannot rely on injuries to unnamed putative class members to support his own standing. See Lewis v. Casey, 518 U.S. 343, 357 (1996); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998) ("Threshold individual standing is a prerequisite for all actions, including class actions.").

a chokehold without provocation because the plaintiff would face this injury again only if the police once again stopped him for a traffic or other violation and then used the allegedly unconstitutional chokehold); O'Shea, 414 U.S. at 496–498 (holding that plaintiffs lacked standing to seek an injunction enjoining judges from engaging in practices such as illegal bond setting because the plaintiffs' injuries were contingent on the plaintiffs violating a law, being charged with a violation, and being tried in a judicial proceeding where they would be subjected to the alleged illegal practices).

This authority reflects the judicial belief that a plaintiff will not willfully violate the law. See O'Shea, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.").  Further, remoteness issues abound when a plaintiff can suffer a future injury only by first violating the law.  Id. at 498 ("[W]here respondents do not claim any constitutional right to engage in conduct proscribed by . . . presumably permissible state laws . . . the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court.").

In light of this clear precedent, lower courts have agreed that a plaintiff's likelihood of a future injury cannot be predicated on the plaintiff first violating a law.  For instance, in Price v. City of Seattle, No. CV03-1365P, 2005 WL 8172772 (W.D. Wash. Jan. 26, 2005), the district court held that the plaintiffs lacked standing to seek injunctive relief to enjoin a city from implementing a mandatory impound policy for drivers found to be driving with a suspended license.  The plaintiffs did not challenge the legality of the law's prohibition of driving with a suspended license; rather, they challenged "the manner in which Seattle police officers impound their cars when they are caught . . . [driving with a suspended license]."  Id. at *4.  As a result,

"[t]he only way that a person would suffer under the City's allegedly unlawful impound policy is if that person is engaged in the illegal conduct of driving while his or her license is suspended and is caught by the police." Id.  The court rejected the plaintiffs' argument that they would continue to be at risk of suffering from the allegedly unlawful impound policy because the plaintiffs planned to continue to drive with suspended licenses, explaining that this argument flew "in the face of the presumption set out in O'Shea that Plaintiffs will not violate the law." Id.  The court concluded that O'Shea's presumption, "together with the chance that a police officer will catch the [suspended license]-driver[,] amount to a speculative injury that cannot support standing for injunctive relief." Id.

This case is like Price.  Versen does not challenge the validity of the blight ordinance's prohibition against dumping.  Rather, he challenges the manner in which the City's police officers impound an individual's vehicle when the individual is caught using the vehicle in the commission of a blight violation, as well as the manner in which the City provides a hearing to challenge the charge and impound.  As a result, the only way that an individual would suffer under the City's allegedly unlawful impound and hearing procedures is if that individual first engages in the illegal conduct of dumping and is caught doing so.  Although Versen contends that he plans to keep dumping furniture and other items in the future, O'Shea directs the Court to presume that Versen will not commit further blight violations.  This presumption, coupled with the attenuated chance that Versen will again be subjected to the City's allegedly unconstitutional practices (as he would first need to commit a violation, get caught doing so, and have his van impounded), compel the Court's conclusion that Versen's alleged injury absent injunctive relief is too speculative and, therefore, he lacks standing to bring the instant motion for a preliminary injunction.

Versen attempts to liken this case to <u>Alsaada v. City of Columbus</u>, 536 F. Supp. 3d 216 (S.D. Ohio 2021), in which the district court granted protesters' motion for a preliminary injunction against a city and its police officers to prevent the police officers from using excessive force against nonviolent protestors, including preventing officers from using excessive force to enforce traffic laws (i.e., dispel orders). However, this case is not like <u>Alsaada</u>. The <u>Alsaada</u> court found that the plaintiffs' risk of future harm was non-speculative because the plaintiffs declared an intention to continue engaging in constitutionally protected activity (i.e., peaceful protests of racial injustice) and produced evidence of Defendants' ongoing, sustained pattern of using excessive force against nonviolent protestors. <u>Alsaada</u>, 536 F. Supp. 3d at 256. If a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, . . . and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979) (quoting <u>Doe v. Bolton</u>, 410 U.S. 179, 188 (1973)). Versen does not argue that placing couches or other items in empty lots is a course of conduct that is affected with a constitutional interest. Further, the <u>Alsaada</u> plaintiffs did not declare an intention to commit future traffic violations. Thus, the <u>Alsaada</u> plaintiffs' risk of future injury was not contingent on the plaintiffs violating the law. By contrast, Versen has declared an intention to continue dumping items in the City and, therefore, his risk of future injury is contingent on his committing blight violations.[2]

---

[2] Versen argues that "the future harm at issue is not 'contingent on illegal activity', it is contingent on <u>suspected</u> illegal activity." Reply at 1 (emphasis in original). Given that Versen's dumping was caught on camera—demonstrating almost certainly that he had engaged in illegal activity—he cannot reasonably claim that his future actions will amount only to suspected illegal activity. But even if so characterized, Versen's position would still suffer from speculativeness: It is purely

To face a future injury, Versen would need to use his van to commit another blight violation, be caught doing so, and have his van impounded by the police as a result. He, therefore, lacks standing to bring the instant motion for a preliminary injunction.

## B. Preliminary Injunction

Even if Versen possessed standing, he would not be entitled to a preliminary injunction. "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty., 796 F.3d 636, 642 (6th Cir. 2015) (punctuation modified). This burden is considerable, as "the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir. 2000) (punctuation modified). The circumstances that clearly demand a preliminary injunction are the limited instances where a plaintiff shows that he or she faces an immediate, non-speculative injury if the preliminary injunction is not granted. See D.T. v. Sumner Cnty. Sch., 942 F.3d 324, 327 (6th Cir. 2019) ("To merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical.") (punctuation modified); Abney v. Amgen, Inc., 443 F.3d 540, 547 (6th Cir. 2006) (explaining that an irreparable injury must be "actual and imminent harm rather than harm that is speculative or unsubstantiated") (punctuation modified). For the reasons discussed above under the standing heading, Versen is unable to make this showing. Accordingly, this is not the rare case where a preliminary injunction is appropriate.

---

a guess that he would engage in suspected illegal activity <u>and</u> be detected <u>and</u> pursued by the authorities—<u>and</u> in a way that is constitutionally problematic.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Versen's motion for a preliminary injunction (Dkt. 4).

**IT IS SO ORDERED.**

Dated:  March 7, 2022                         s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                                      United States District Judge