UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC VERSEN,

        Plaintiff,                              Case No. 21-11545

vs.                                            HON. MARK A. GOLDSMITH

CITY OF DETROIT,

        Defendant.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CERTIFY A CLASS (Dkt. 46)**

Before the Court is Plaintiff Eric Versen's motion to certify a class of at least 56 individuals whose vehicles were allegedly unconstitutionally impounded under Defendant the City of Detroit's blight ordinance (Dkt. 46).[1] For the reasons that follow, the Court grants the motion in part and denies it in part.

### I. BACKGROUND

On May 21, 2021, Versen used his work vehicle to place a couch in an empty lot. Mot. at 5. According to the City, Versen's vehicle was towed and impounded after Detroit police officer Jeremy Woods reviewed surveillance footage of an alleged illegal dumping and identified Versen's vehicle as the vehicle involved. Resp. at 5. Woods located Versen's van parked on the street and called a towing company to remove the vehicle. Id. Versen asserts that the van was legally parked in front of his home at the time of seizure. Mot. at 7.

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Versen's motion, the briefing includes the City's response (Dkt. 47) and Versen's reply (Dkt. 48).

Detroit police officer Jana Greeno issued Versen a blight violation notice on May 25, 2021, informing Versen that he was subject to a fine of $800 and a fee of $30 and informing him that his court date for contesting the blight notice was August 18, 2021. Id. at 6. Versen asserts that he paid the fees and fines necessary to regain possession of the vehicle because his vehicle was necessary to his livelihood, and he would not have been able to wait the twelve weeks until the hearing. Id. at 7. Versen asserts that the City has similarly impounded the vehicles of at least 56 individuals under the blight ordinance. Id. (citing Police Reports (Dkt. 46-6)).

Versen filed this lawsuit as a class action, alleging among other claims that: (i) the impoundment of his and putative class members' vehicles without a warrant violated their rights under the Fourth Amendment, (ii) Versen and the putative class members' rights to due process were violated by the failure to provide a prompt hearing to recover his vehicle, and (iii) the City's impoundment ordinance was facially unconstitutional. Compl. (Dkt. 1).

Versen moves for certification of two classes comprising:

(1) All persons who were subjected to a warrantless seizure of their legally parked vehicles pursuant to Detroit's blight ordinance, after the alleged blight violation, where their vehicles were detained pending payment of the blight ordinance fines, beginning July 1, 2018 until present.

(2) All persons whose vehicle were seized pursuant to Detroit's blight ordinance without a prior hearing who were not given an opportunity to contest the seizure in an administrative or judicial hearing until 14 or more days elapsed from the date their vehicles were seized.

Mot. at 22–23. Versen moves for certification "on all issues except damages." Id. at 23.

Since the filing of Versen's certification motion, the Court granted summary judgment in favor of the City on Versen's Fourth Amendment claim and granted summary judgement as to all

2

claims against officers Woods and Greeno. See 6/23/2023 Op. and Order (Dkt. 63). As explained below, the Court grants the motion in part, certifying for purposes of liability only, the second class defined above.[2]

## II. ANALYSIS

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual [sic] named parties only." Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979). The party seeking to certify a class bears the burden of showing that the requirements of Federal Rule of Civil Procedure 23 are satisfied. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Although district courts must conduct a "rigorous analysis" to ensure that Rule 23's requirements are met, Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982), they "maintain[ ] substantial discretion in determining whether to certify a class," Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 643–644 (6th Cir. 2006). In determining the propriety of a class action, the Court does not inquire whether the plaintiff will ultimately succeed on the merits; rather, the Court scrutinizes whether the requirements of Rule 23 are satisfied. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). To obtain class certification, Versen must show that four requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)).

---

[2] Because the Court granted the City summary judgment on Versen's Fourth Amendment claim, Versen's motion is denied as moot to the extent it seeks to certify a putative class based on the alleged violation of their Fourth Amendment rights.

If these prerequisites under Rule 23(a) are met, "the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." Id. Here, Versen seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[3] In addition, Versen must demonstrate that the class meets "an implied ascertainability requirement." Sandusky Wellness Center, LLC v. ASD Specialty Healthcase, Inc., 863 F.3d 460, 466 (6th Cir. 2017).

The Court proceeds by first discussing the numerosity, typicality, commonality, and adequacy requirements under Rule 23(a), and next addresses the predominance, superiority, and ascertainability requirements under Rule 23(b)(3).

### A. Rule 23(a) Requirements

Although the City does not explicitly challenge Versen's ability to meet Rule 23(a)'s prerequisite requirements, Resp. at 7–10, the Court nonetheless analyzes each of these requirements and finds that they are satisfied.

### 1. Numerosity

As to numerosity, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although "no strict numerical test exists, 'substantial' numbers of affected [individuals] are sufficient to satisfy this requirement." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012) (punctuation modified). Courts within the Sixth Circuit have "stated that the numerosity requirement is fulfilled when the number of class members

---

[3] Versen's motion submits that he also seeks certification for declaratory relief under subsection (b)(2). Mot. 15–16. However, since the filing of Versen's motion, the Court denied Versen's motion for declaratory relief (Dkt. 25) in its March 27, 2023 order (Dkt. 49). Having denied Versen's prior request for declaratory relief, the Court need not address Versen's request for certification under subsection (b)(2).

4

exceeds forty." Rouse v. Washington, No. 20-cv-11409, 2021 WL 2434196, at *13 (E.D. Mich. June 15, 2021) (punctuation modified); see also McFarlin v. Word Enters., LLC, No. 16-cv-12536, 2017 WL 4416451, at *1 (E.D. Mich. Oct. 5, 2017) (noting that "a class is not required to have several hundred members in order for this Court to find numerosity based on numbers alone" and that the United States Court of Appeals for the Sixth Circuit "has certified a class with as few as thirty-five people") (punctuation modified).

Versen asserts that the City subjected more than 56 people to its policy of impounding vehicles without providing these individuals with either hearings before impound or prompt hearings after impoundment. Mot. at 10. This group is sufficiently numerous to satisfy this requirement.

2. **Commonality and Typicality**

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class," and Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Analyses of "[c]ommonality and typicality tend to merge because both of them serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Young, 693 F.3d at 542 (punctuation modified). Commonality requires that plaintiff "demonstrate the class members 'have suffered the same injury.'" Rouse, 2021 WL 2434196, at *14 (quoting Dukes, 564 U.S. at 350). Similarly, "a necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." Young, 693 F.3d at 542 (punctuation modified).

5

Versen has alleged common issues of law and fact. He alleges that the City deprived putative class members of their procedural due process rights by impounding their vehicles without providing them a "constitutionally prompt post deprivation" hearing. Mot. at 11. As Versen points out, id., the City's blight ordinance expressly prohibits hearings until fourteen days after service of the blight violation. Thus, each class member's alleged injury was caused by the operation of the same City ordinance. The Court is satisfied that such allegations clear the commonality hurdle.

As to typicality, Versen must demonstrate that the class members' claims are "fairly encompassed by the named plaintiffs' claims." In re Whirlpool, 722 F.3d at 852. Versen satisfies this requirement. Versen alleges that the operation of the ordinance deprived him of his procedural due process rights. Mot. at 3; Compl. ¶¶ 29–39. Versen's allegations are nearly identical to those of the putative class members, see Compl. ¶¶ 40–45, and the Court is not aware of any reason that Versen's interests would conflict with those of the putative class.

3. **Adequacy**

To satisfy the adequacy requirement under Rule 23(a)(4), Versen must (i) "have common interests with unnamed members of the class" and (ii) show that he "will vigorously prosecute the interests of the class through qualified counsel." Young, 693 F.3d at 543.

The Court concludes that Versen is an adequate class representative for reasons similar to those identified above. Given that Versen and putative class members allegedly suffered the violation of their due process rights, Versen's interest in pursuing claims for relief relating to that deprivation align with those of the putative class. As to the adequacy of counsel, Versen's counsel report that they are well-versed in litigating complex civil rights cases, see Mot. at 14 (citing Decl. of Kevin Ernst and Hannah Felstra Dkt. 46-7), and the City makes no argument challenging the

adequacy of counsel's representation. See Resp. Versen, through representation by class counsel, is an adequate representative.

### B. Rule 23(b)(3)

The Court must also determine whether certification is proper under Rule 23(b)(3)'s predominance, superiority, and implied ascertainability requirements. The Court addresses each requirement in turn.

#### 1. Predominance

The City primarily argues that certification is not proper because putative class members' individualized damages claims preclude their ability to satisfy the predominance requirement under Rule 23(b)(3). Resp. at 7–8. In response, Versen contends that the Sixth Circuit has repeatedly held it proper for courts to certify classes as to issues of liability only, and it proposes that the Court does so here. See Reply at 4 (reiterating that he seeks "class certification on the issue of liability"). The Court agrees with Versen. As explained further below, the prospect of individualized damages does not preclude the Court from certifying the putative class as to liability.

Rule 23(b)(3) permits the certification of a class where "common questions of law or fact 'predominate over any questions affecting only individual members,' and the collective approach is 'superior' to other methods of adjudicating the controversy." Speerly v. Gen. Motors, LLC, 343 F.R.D. 493, 507 (E.D. Mich. 2023) (quoting Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 466 (6th Cir. 2017)). In determining whether a putative class satisfies this predominance inquiry, courts assess whether factual or legal questions are "subject to generalized proof, and thus applicable to the class as a whole." Id. (punctuation modified); see also Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 619 (6th Cir.2007) ("The

predominance requirement is met if [a common legal or fact] question is at the heart of the litigation.").

The City argues that the proposed class fails to meet the predominance requirement because individualized issues arise with respect to (i) the "manner [in] which the vehicles [were] impounded" and (ii) the assessment of damages. Resp. at 8. Neither argument has merit.

As to the first argument, the City submits that individualized issues with respect to the manner of impoundment predominate over issues common to the class because the City can impound vehicles "under both the City of Detroit blight ordinance and . . . the State of Michigan littering statute." Resp. at 8. But the state littering ordinance to which the City refers provides no authorization for the impoundment of vehicles. See Mich. Comp. L. § 750.552a. And as the City acknowledges, see Resp. at 8, both Versen and the putative class members bring due process claims based on the impoundment of their vehicles pursuant to the City ordinance, not the State littering statute. See Compl.

The City's reliance on police officer Greeno's statement that vehicle impoundment occurs on a "case-by-case" basis similarly fails to support the City's argument. Id. at 9. The general proposition that one impoundment may differ slightly from the next is insufficient to establish that individualized issues predominate.[4] See, e.g., Avio, Inc. v. Alfoccino, Inc., 311 F.R.D. 434, 446 (E.D. Mich. 2015) (finding the predominance requirement satisfied in a class action suit alleging that plaintiffs received unauthorized fax communications from restaurant owners where "individualized" issues regarding consent were not "so widespread as to overcome the numerous and foundational issues common to all members of the class"). Because the "heart" of the claims

---

[4] The City fails to explain with any specificity how the impoundment of vehicles differs from case to case. Resp. at 9.

8

brought by Versen and the putative class members arises from the impoundment of their vehicles without a sufficiently prompt hearing, minor differences in the "manner" in which the City impounded putative class members' vehicles do not predominate over common issues. See id.

The City also argues that Versen cannot meet the predominance requirement because the damages claimed by putative class members "could differ" based on circumstances particular to each member, such as "when the vehicle was impounded and how long it was held before the individual paid the ticket," and damages based on an individual's "use of the vehicle." Resp. at 8–9.

The City relies on Comcast Corp. v. Behrend, 569 U.S. 27 (2013) to argue that individual damage calculations preclude certification here. But Comcast fails to support the City's argument. In that case, the Supreme Court reversed the certification of a liability and damages class of some two million cable service customers where plaintiffs alleged one theory of antitrust liability common to the class even though plaintiffs' asserted damages methodology relied on the impact of multiple theories of liability, only one of which remained in the case. Id. at 34–35. In other words, defendants had shown that no viable damage theory was available to cover a two-million-member class. Id. at 37–38.

This case differs from Comcast in several respects. First, the plaintiffs in Comcast sought to certify classes with respect to both liability and damages. Here, Versen seeks only to certify a class for liability purposes. See Reply at 4. Notably, the Sixth Circuit has rejected similar attempts to broadly interpret Comcast as prohibiting certification where the issue of liability remains common to the class and damages may be individualized. See In re Whirlpool, 722 F.3d at 860 ("Where determinations on liability and damages have been bifurcated, . . . , the decision in Comcast—to reject certification of a liability and damages class because plaintiffs failed to

9

establish that damages could be measured on a classwide basis—has limited application.") (punctuation modified). Second—unlike the damages sought by plaintiffs in Comcast, which were based on multiple theories of antitrust liability that were not all common to the class—here, any damages sought by Versen's putative class members would necessarily stem from the same theory of liability, namely, the impoundment of their vehicles without a sufficiently prompt hearing. Third, the size of the putative class in Comcast, at two million members, rendered a common damage theory a practical necessity to proceed on a class basis; the much smaller class here carries no such implication. Comcast has no bearing on whether certification is appropriate here.

Setting Comcast aside, the City is also incorrect in its assertion that individualized damages preclude satisfaction of the predominance requirement. "Courts within the Sixth Circuit have held that if common issues predominate, class certification should not be denied simply because individual class members are entitled to differing damages." In re Sonic Corp. Customer Data Breach Litig., No. 1:17-MD-02807-JSG, 2020 WL 6701992, at *7 (N.D. Ohio Nov. 13, 2020) (quoting Gawry v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 942, 958 (N.D. Ohio 2009) (collecting cases)). In "the mine run of cases, it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." In re Whirlpool, 722 F.3d at 861. "When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." Id. at 860 (punctuation modified).

In class action suits involving individualized damage determinations, the Sixth Circuit has explained that Rule 23 permits district courts to utilize several solutions to address individualized damages, including bifurcating the issues of liability and damages, utilizing a special master to

10

determine damages, or employing a formula for damage calculation. See, e.g., Olden v. LaFarge Corp., 383 F.3d 495, 509 (6th Cir. 2004) (affirming district court's certification of class and suggesting bifurcation or use of special master to determine damages); Hicks v. State Farm Fire & Cas. Co., 965 F.3d 452, 460 (6th Cir. 2020) (affirming district court's use of a formula to determine class members' damages). Indeed, district courts within the Sixth Circuit have repeatedly granted certification in cases involving class plaintiffs who were entitled to varying damage awards as a result of alleged constitutional harms analogous to those at issue here. See, e.g., Brown v. City of Detroit, No. 10-12162, 2012 WL 4470433, at *1 (E.D. Mich. Sept. 27, 2012) (granting certification of classes composed of individuals alleging unconstitutional post-arrest detainment periods and conditions and bifurcating issues of liability and damages); Zelaya v. Hammer, 342 F.R.D. 426, 437 (E.D. Tenn. 2022) (granting certification of class of Hispanic workers arrested for immigration violations who alleged the arrests constituted a conspiracy to violate their civil rights and noting that a "class may be certified based on a predominant common issue [of liability] even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members") (punctuation modified).

Applying these authorities here, the Court concludes that common issues with respect to liability—i.e., the deprivation of putative plaintiffs' procedural due process rights via the City's failure to provide a sufficiently prompt hearing through application of the blight ordinance—predominate over the individualized assessment of damages. Given the relatively small size of the putative class (around 56 individuals), the process for determining damage awards is not so unworkable as to "overwhelm questions common to the class." Comcast, 569 U.S. at 34. Similarly, because the likely damage assessments at issue in this case are also relatively small, the class action process will "achieve economies of time and expense." In re Whirlpool, 722 F.3d at

11

860. Moreover, while the Court does not now decide this issue, the claims in this case may be well-suited for application of a standard amount of damages for each class member.

In short, the prospect of individualized damages does not preclude Plaintiffs from clearing the predominance hurdle. The Court may properly certify the putative class with respect to liability and address the issue of damages once liability is resolved. See Olden, 383 F.3d at 509 (affirming certification of class over defendant's objection that the prospect individualized damages failed the predominance requirement because the court may "bifurcate the issue of liability from the issue of damages, and if liability is found, the issue of damages can be decided by a special master or by another method").

2. **Superiority**

Rule 23(b) requires the Court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine whether a class action is "superior," the Sixth Circuit instructs that district courts should consider (i) the difficulties of managing a class action, (ii) whether a class action justifies the "expenditure of judicial time and energy" necessary to adjudicate a class action, and (iii) the "value of individual damage awards, as small awards weigh in favor of class suits." Martin v. Behr Dayton Thermal Prod. LLC, 896 F.3d 405, 415–416 (6th Cir. 2018).

The Court finds that a class action is a superior method of adjudicating this controversy. Versen and the putative class members' claims in this case share a common nucleus of facts and law—i.e., the alleged violation of due process rights as a result of the City's failure to provide a prompt hearing in connection with the impoundment of putative plaintiffs' vehicles. Given this commonality of law and facts, the efficiencies gained in adjudicating Plaintiffs' claims as a class justify the judicial time and expense inherent to the class action format. Additionally, the

likelihood of small damage awards in this case weighs in favor of a class action. See id.; Young, 693 F.3d at 545 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

3. **Ascertainability**

"Rule 23(b)(3) classes must also meet an implied ascertainability requirement. To satisfy this requirement, a class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." Hicks, 965 F.3d at 464 (punctuation modified).

Versen submits that the putative class is ascertainable because putative class members' names and contact information have been identified through discovery. Mot. at 23. The City makes no argument objecting to the ascertainability of the class. The Court concludes that the class is readily ascertainable for purposes of Rule 23(b)(3).

Plaintiffs have satisfied the predominance, superiority, and implied ascertainability requirements under Rule 23(b). Having determined that Plaintiffs also meet the requirements under Rule 23(a), the Court concludes that certification of the putative class as to liability is appropriate.

### III. CONCLUSION

For the reasons set forth above, the Court grants in part Versen's motion for class certification.[5] The Court appoints Kevin S. Ernst and Hannah R. Fielstra as class counsel. Within

---

[5] Because the Court previously granted summary judgment on Versen's Fourth Amendment claim, see 6/23/2023 Op. and Order, the Court denies Versen's motion as moot to the extent it seeks to certify a class premised on claims arising under the Fourth Amendment.

13

10 days, the parties must file a joint statement setting forth their agreement or disagreement on the form and manner of class notice.

SO ORDERED.

Dated: August 8, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge